PREGERSON, Circuit Judge,
dissenting:
The prosecution in this case struck four out of five black prospective jurors during voir dire. Three of those four black prospective jurors were struck using peremptory challenges. Perhaps this was simply an incredible coincidence. But it is hard to avoid concluding “that the State was trying to avoid black jurors.” Miller-El v. Dretke, 545 U.S. 231, 255, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005).
“Because just one racial strike calls for a retrial,” Kesser v. Cambra, 465 F.3d 351, 369 (9th Cir.2006) (en banc), we need not *704 determine whether the prosecution acted with discriminatory intent every time it used a peremptory challenge to strike yet another black prospective juror. If even just one of the prosecution’s peremptory challenges was not race-neutral, Mayes is entitled to habeas relief.
At least one of the prosecution’s peremptory strikes was not race-neutral. The record cannot support any race-neutral reason for the prosecution’s peremptory strike against Ray S., a black prospective juror. In concluding that the peremptory strike against Ray S. was race-neutral, the state trial court engaged in an unreasonable determination of the facts and contravened clearly established federal law.
I would grant Mayes’s habeas petition on his Batson claim. Therefore, I respectfully dissent.
I. The peremptory strike against Ray S. was not race-neutral.
When asked to provide a race-neutral reason for striking Ray S., the prosecution explained that Ray S. had “the most problems with believing the type of witness the State [was] going to be calling in trial, a person who would be a convicted felon and a codefendant testifying under a plea agreement.” There is a big problem with the prosecutor’s explanation: it ain’t true.
During voir dire, the prosecution asked prospective jurors how they felt about “the idea of a witness who is testifying in a criminal case, who actually was one of the codefendants, who is testifying under an agreement.” Elaborating, the prosecution explained, “In this instance, the person who is testifying has been convicted.”
It is natural to be skeptical of a convicted criminal who is only coming forward to testify against his accomplices to enjoy the benefits of a favorable plea bargain. Several prospective jurors in this case shared this natural skepticism. After asking prospective jurors to consider a scenario in which a convicted co-defendant was testifying under a plea agreement, the prosecution asked, “Anybody like that concept?” The prospective jurors apparently made it clear that they did not like that concept, because the prosecution immediately added, “I didn’t think so. Nobody likes it.”
Several white prospective jurors personally expressed this skepticism. Katherine P. feared that a co-defendant testifying pursuant to a plea agreement “would do it from ulterior motives.” She also expressed other reasons for distrusting such a witness: “someone who has committed several felonies, I might think that they weren’t too truthful, also.” Paul S., likewise, expressed skepticism about such testimony: “I think I am less comfortable about it.” The prospective juror who became Juror No. 8 also voiced concern: “When you start talking about having one person rat on another one to get a conviction, and so forth, that’s a tough issue .... ” The prospective juror who became Juror No. 12 agreed: “I think that the judgment of truthfulness of such a witness is going to be a lot harder than an ordinary witness.... ”
Though they expressed considerable skepticism towards a plea-bargaining co-defendant, these prospective jurors affirmed that they would ultimately evaluate such a witness fairly and impartially. Juror No. 12 resolved his misgivings about such co-defendant testimony by affirming that, though he would hold such testimony to a higher standard than the testimony of an “ordinary witness,” “[i]t could meet the high standard of belief.” Juror No. 8, likewise, acknowledged that he would ultimately feel compelled to “weigh it for what it is.”
Ray S. — the black prospective juror struck by the prosecution — echoed his col *705 leagues’ attitudes towards testimony from a plea-bargaining co-defendant. Asked how he felt about such testimony, Ray S. joined his colleagues in initially expressing skepticism: “You can’t put a whole lot of credibility into it.” But like his colleagues, Ray S. also understood that he would need to evaluate such testimony fairly and impartially. When the prosecution asked Ray S., “are you telling me that, just because this guy was dealing, you are never going to believe anything he says?”, Ray S. replied, “No, not at all.” "While Ray S. was aware of the risk that such a witness “has nothing to lose so he can sit up there and say whatever he has to say and however he wants to say it,” Ray S. emphasized that he did not assume that all such witnesses would do this: “I am just saying it is possible.” Like his colleagues, Ray S. affirmed that he would ultimately evaluate the witness’s credibility in the same way he would evaluate the credibility of any other witness, using “[wjhat I use in everyday life, just my natural skills I have in judging people.”
Immediately after examining Ray S. during voir dire, the prosecution acknowledged that Ray S.’s position matched the position taken by Ray S.’s colleagues: “I guess, if I went across the board, you are probably pretty much all saying the same thing.”
Only later — after Mayes’s Batson objection compelled the prosecution to offer some race-neutral reason for striking Ray S. — did the prosecution allege that Ray S. had “the most problems with believing the type of witness the State [was] going to be calling in this trial, a person who would be a convicted felon and a codefendant testifying under a plea agreement.” As the record shows, this proffered race-neutral reason simply was not true.
Like other prospective jurors, Ray S. expressed skepticism towards a co-defendant testifying to fulfill a plea bargain. Like other prospective jurors, Ray S. tempered this skepticism by affirming that he would ultimately evaluate the credibility of such a witness fairly and impartially. Unlike most other prospective jurors, Ray S. was black. And unlike other prospective jurors who were white — but like most other prospective jurors- who were black— Ray S. was removed from the venire by the prosecutor’s exercise of a peremptory strike. This is not what a race-neutral peremptory strike looks like.
II. Mayes is entitled to habeas relief.
In ruling that the peremptory strike against Ray S. was race-neutral, the state trial court contravened clearly established federal law, and engaged in an unreasonable determination of the facts. Thus, I would grant Mayes’s habeas petition.
A. The state trial court contravened clearly established federal law.
First, the state trial court contravened clearly established federal law, see 28 U.S.C. § 2254(d)(1), by mischaracterizing Ray S.’s testimony to bolster the prosecution’s purported race-neutral reason for striking Ray S.
The state trial court, in explaining why it ruled that the prosecutor’s strike against Ray S. was race-neutral, could not justify its ruling without seriously mischaracteriz-ing Ray S.’s testimony. According to the trial court, “[Ray S.j practically told us that if we call [a co-defendant testifying pursuant to a plea agreement], no chance [Ray S.] was going, to believe [the co-defendant].” But Ray S. said no such thing. Nevertheless, the trial court reiterated that “[Ray S.] said, T am not going to believe it.’ ” In fact, Ray S. said the exact opposite.
*706 It is clearly established law that a prosecutor may not mischaracterize a prospective juror’s voir dire statements to justify the prosecution’s exercise of a peremptory strike. Miller-El, 545 U.S. at 244, 125 S.Ct. 2317. In my view, the trial court’s Batson ruling was contrary to the clearly established law of Miller-El. A state court decision is contrary to clearly established federal law when it “confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.” Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005). The trial court’s mis-characterization of Ray S.’s testimony is materially indistinguishable from a prosecutor mischaracterizing juror testimony: judges, no less than prosecutors, are ministers of justice, who are obliged to see that justice is done and truth prevails.
B. The state trial court based its ruling on an unreasonable determination of the facts.
As any reasonable comparative juror analysis reveals, the prosecution’s peremptory strike against Ray S. was not race-neutral. Thus, the state trial court’s conclusion that the prosecution’s strike against Ray S. was race-neutral was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(2).
To ascertain whether the state trial court reasonably determined that the peremptory strike against Ray S. was race-neutral, we must compare Ray S. to other prospective jurors who were not peremptorily struck by the prosecution. “If a prosecutor’s proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson’s third step.” Miller-El, 545 U.S. at 241, 125 S.Ct. 2317. Where, as here, “the state court has not performed this comparative juror analysis, we must do so in the first instance.” Jamerson v. Runnels, 713 F.3d 1218, 1226 (9th Cir.2013). Under this comparative juror analysis, we compare prospective jurors who were struck by the prosecution to all prospective jurors who were not struck by the prosecution, whether or not those prospective jurors ultimately served on the jury. See Miller-El, 545 U.S. at 244-45, 125 S.Ct. 2317.
In this ease, other prospective jurors were like Ray S. in every relevant way except for their race — and they were not peremptorily struck by the prosecution. Thus, it was unreasonable for the state trial court to conclude that the prosecution’s peremptory strike against Ray S. was raceneutral.
To be sure, Ray S. voiced skepticism about a codefendant testifying pursuant to a plea agreement. In this respect, Ray S. was no different from four of his fellow prospective jurors: Katherine P., Paul S., Juror No. 8, and Juror No. 12. All four of these other prospective jurors were white. “If, indeed, [Ray S.’s] thoughts on [a co-defendant testifying pursuant to a plea agreement] did make the prosecutor uneasy, he should have worried about a number of white panel members he accepted with no evident reservations.” Miller-El, 545 U.S. at 244, 125 S.Ct. 2317. But the prosecution did not worry about those other prospective jurors — who shared Ray S.’s concerns, but did not share his race.
Ray S. differed from his four colleagues in just one relevant respect: Ray S. was black. And so the prosecution struck Ray S.; it did not strike his four white colleagues. In this light, it was unreasonable for the state trial court to conclude that the prosecution’s peremptory strike against Ray S was race-neutral.
*707 Conclusion
I would hold that the state trial court’s denial of Mayes’s Batson claim was contrary to clearly established federal law and rested on an unreasonable determination of the facts, and I would grant the habeas petition. Therefore, I respectfully dissent.